terest from that date, because it is as of that time that his damage has been sustained. The relator was not entitled to interest on the award. Its demand was properly refused by the comptroller, and for that reason the order appealed from must be reversed, with costs and disbursements, and the writ quashed, with $50 costs.

VAN BRUNT, P. J., and INGRAHAM, J., concur.

O'BRIEN, J. For the reasons stated in the opinion of Mr. Justice LAWRENCE at special term, I dissent.

---

(59 App. Div. 340.)

SOMMERS v. SOMMERS et al.

(Supreme Court, Appellate Division, Third Department. March 6, 1901.)

1. SUBROGATION.
    The mere fact that money loaned to a devisee of real estate charged with the payment of legacies is appropriated by him to pay such legacies does not entitle the lender to be subrogated to the rights of the legatees against the land.

2. WILLS—CHARGES ON LAND—LIABILITY OF DEVISEE.
    A will by which a testator devised his entire estate, including his homestead farm, to his son, made plaintiff's support a charge on the property, —plaintiff being an unmarried daughter living with and provided for by the testator when the will was made,—but it did not in express terms direct the son to furnish such support. *Held*, that the son, having accepted the devise, was charged with the duty of furnishing plaintiff's support, and she could not be compelled to accept support on the farm at the hands of any one in possession who was willing to furnish it.

Appeal from special term, Schoharie county.

Action by Mary J. Sommers against David Jaleel Sommers and Catharine Schrader. From an interlocutory judgment sustaining a demurrer to the answer of the defendant Catharine Schrader, she appeals. Affirmed.

The action was brought to recover the value of the plaintiff's support under the will of her father, David Sommers, deceased; to have such support declared a lien on the farm described in the complaint; and to have the farm sold to satisfy the lien. The complaint alleges the death of David Sommers on April 20, 1883, owning the farm described in the complaint, and leaving a will, which was duly admitted to probate on May 12, 1883, a copy of which is annexed to the complaint. The testator left, him surviving, a widow, who has since died; one son, the defendant David Jaleel Sommers; and six daughters, all of whom are married except the plaintiff. The testator by his will gave to his son David Jaleel all his real and personal property, consisting of his homestead farm, the stock thereon, farming utensils, money, notes, and accounts, and directed that he pay to his married sisters certain legacies, amounting to $600. For his wife and his two unmarried daughters the testator made the following provisions: "Thirdly. I will and order that my beloved wife, Julia, shall have her home and maintenance, and good and proper clothing, in sickness and in health, and shall have the use and right to occupy the north room below, and the room with the two bedrooms above, and privilege of cellar, and thirty dollars yearly, as long as she lives. Fourthly. I will and order that my son, David Jaleel, pay to my daughter Mary J. two hundred dollars, five years after my decease, without interest, and to my daughter Emily A. one hundred and fifty dollars, five years after my decease, without interest; and that my daughters Mary J. and Emily A. shall have

their home and maintenance and good clothing, in sickness and health, here out of my estate, as long as they are single and unmarried, and they shall have the same right and privilege of the house to use as was given to their beloved mother; but, if they marry, then they shall have the same given to them as my other daughters had,—clothes, two beds, four pillows, bedclothes, one cow, and fifty dollars." After the death of the testator his son, David Jaleel, accepted the devises and bequests to him, and supported his mother at the homestead so long as she lived, and also furnished a home and maintenance to the plaintiff on the farm until some time in December, 1899; her other sister, Emily A., named in this fourth paragraph of the will, having previously married. In December, 1899, David Jaleel Sommers, having become insolvent, removed from and abandoned the farm, and informed the plaintiff that he was unable to support her and to carry out any longer the provisions of his father's will, and has refused to return to the premises and furnish her support thereon. On October 16, 1894, David Jaleel Sommers and his wife executed and delivered to the defendant Catharine Schrader a mortgage on the said farm for the consideration of $2,200, which contains the following provision: "This conveyance is made subject to the life lease of Mary Jane Sommers, which is mentioned and described in the last will and testament of David Sommers as follows: 'That my daughter Mary J. Sommers shall have her home and maintenance and good clothing, in sickness and health, here out of my estate, as long as they are single and unmarried, and that they shall have the same right of the house to use as was given to their beloved mother.'" The defendant Catharine Schrader has interposed an answer containing several defenses, the third of which is, in substance, that she is the holder of the mortgage mentioned in the complaint, for $2,200, the consideration of which was a mortgage of $800 held by her, and theretofore given by David Jaleel Sommers to her father, and the remaining $1,400 of which was for money loaned. She alleges "that the said David Jaleel Sommers took said money so borrowed of this defendant as aforesaid, amounting to $1,400 or thereabouts, and used it to pay the legacies, and interest thereon, given in said will"; that the legacies were made a charge on the farm devised. And this defendant claims that, to the extent of the money furnished by her in payment of the legacies, she is entitled to a lien in equity on the farm prior to that of the plaintiff. She admits that the mortgage contains the clause above quoted. For a fourth defense, she alleges that she, as mortgagee in possession of the farm, has offered to provide plaintiff with a home and maintenance, and everything required in the will, on the said farm, and is still able, ready, and willing to provide a home and maintenance for the plaintiff on the farm. The plaintiff demurred to the third and fourth defenses as insufficient in law upon the face thereof, and from the interlocutory judgment sustaining the demurrer this appeal is taken.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, and SMITH, JJ.

Watson Lamont, for appellant.
L. W. Baxter, for respondent.

EDWARDS, J. The demurrer to the third defense, that the defendant Catharine Schrader has an equitable lien on the farm prior to that of the plaintiff, was properly sustained. The only ground on which such an equitable lien is claimed is that a part of the money which she loaned to David Jaleel Sommers, secured by the mortgage, was used by him in payment of the pecuniary legacies. She claims the right of subrogation from the mere fact of such an appropriation by the mortgagor. It was simply a voluntary loan of money to the mortgagor. She was under no duty to make the loan, nor was it in any way necessary for the protection of any interest that she had in the premises. It does not appear that she even knew of the purpose

to which the money lent by her was to be applied. Quite clearly, she is not in a situation to invoke the doctrine of equitable subrogation. Furthermore, the lien of her mortgage was in express terms made subordinate to the lien of the plaintiff on the premises.

This brings us to the consideration of the fourth defense, which is, in substance, that this defendant, while in possession of the farm as mortgagee, offered to provide the plaintiff with a home and maintenance on said farm, and everything required in the will, and is now able and willing to provide such home and maintenance, but the plaintiff has refused to accept the same. The defendant's contention is that the will makes the plaintiff's support a charge on the real estate, but does not charge the devisee, David Jaleel, with the duty of furnishing such support, and that, inasmuch as there is no personal obligation on him, the plaintiff is compelled to accept support on the farm at the hands of any one in possession who is willing to furnish it. I cannot agree with the contention that David was not directed by the will to furnish a home and maintenance for the plaintiff. The intention of the testator in that respect must be gathered from the entire will, read in the light of the circumstances under which it was made, and the relation of the testator to those who were the natural objects of his bounty and solicitude; and such intention, so ascertained, must be effectuated, although the language used to express it is not the most appropriate that could have been employed by the testator. The will, when thus construed, I think, evinces an unmistakable intention of the testator that David, to whom he gave all his property, should furnish a home and maintenance for the plaintiff, an unmarried daughter of the testator, on the farm; and, to secure this, he has made such support a charge on his real estate. As I have said, in ascertaining the intention of the testator we must consider not only the language of the will, but the circumstances under which it was made. He had a wife, a son, David Jaleel, and six daughters. To the son he gave his farm, the stock and utensils thereon, and the remainder of his personal property. To the four married daughters he gave $150 each, which he directed his son to pay. There remained then to be provided for his wife and his two unmarried daughters, one of whom is the plaintiff. He directed that his wife should have her home, maintenance, and clothing, and certain rooms in the house, and $30 yearly, during her life. He does not in express terms direct that his son shall furnish this home and maintenance to his mother, nor does he direct who shall pay her the $30 yearly; but I think there can be no possible question that the payment of the $30 was the personal obligation of the son, and there can be no less a question, I think, that it was the intention of the testator that the furnishing of the home and maintenance should be by the son. It is almost inconceivable that the testator should have intended to leave his wife with a pittance of $30 a year, and rooms and board in the house on the farm, to be furnished by any one who might happen to be owner or in possession, however distasteful it might happen to be to her. Substantially the same provision is made for the plaintiff as for her mother for home and maintenance so long as she remains unmarried. In case of her marriage the testator directs that she shall have the same

given to her as his other daughters had,—"clothes, two beds, four pillows, bedclothes, one cow, and fifty dollars"; yet no express direction is given as to who shall furnish them. It was evidently his intention that they should be furnished by his son, who took the entire estate, and I think it is equally evident that her home and maintenance until married should also be furnished by the son. At the time of the making of the will the wife and two unmarried daughters were living with and being provided for by the testator, and his clear purpose seems to have been that, when he was taken away, his son, David, to whom he gave all of his property, should be substituted in his place as the one who should continue to provide a home and maintenance for his mother during her life and for his two unmarried sisters until their marriage; in other words, that after the testator's death his wife and two single daughters should be cared for by David in the same manner as they had been cared for by him. The defendant's contention that the father simply gave to his daughter, the plaintiff, the right to be supported on the farm by any person whomsoever who might chance to become the owner or be in possession of the farm, is to presume him to have been destitute of ordinary parental affection and solicitude, and is quite foreign to his intention, as gathered from his entire will.

The judgment appealed from should be affirmed. All concur.